[Cite as *In re K.C.*, 2013-Ohio-1949.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|   |   |   |
|---|---|---|
| IN RE: | : | |
| K.C. | : | CASE NO.  CA2012-08-160 |
| | : | O P I N I O N<br>5/13/2013 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2011-1044

Thomas E. Strinko, 8120 SW 178th Street, Palmetto Bay, Florida 33157, appellant, pro se

Roy D. Wasson, 28 West Flagler Street, Suite 600, Miami, Florida 33130, for appellees

**PIPER, J.**

{¶ 1}  Appellant, Thomas Strinko (Grandfather), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, ordering supervised visitation between himself and his granddaughter, K.C.

{¶ 2}  Grandfather's daughter, Sontha Strinko (Mother), gave birth to K.C. when Mother was not married to K.C.'s father, Nicholas Caraisco (Father).  Mother allowed Grandfather to visit with K.C. on multiple occasions, but then declined to allow Grandfather to

have unsupervised visits with K.C. after an incident where Grandfather kissed K.C. on the lips when Mother was out of the room.

{¶ 3} Grandfather filed a complaint for visitation in the juvenile court and the matter proceeded to a hearing before the magistrate. At the time of the hearing, K.C. was four years old. A few weeks before the hearing, Mother moved to North Carolina with K.C., and began living with a male "friend." Grandfather and his wife, who is not Mother's biological mother, live in Florida. Due to the distance between North Carolina and Florida, (or Ohio and Florida), Grandfather requested long blocks of visitation scheduled over four-day periods each month, as well as two weeks of visitation each summer and winter.

{¶ 4} During the hearing, Mother and Grandfather appeared and were each represented by counsel. Father sent a letter to the court but did not personally appear. In Father's letter, he stated that he had received service of Grandfather's complaint for visitation, and that he did not support unsupervised visitation between Grandfather and K.C. Mother and Grandfather presented evidence, and the magistrate denied Grandfather's complaint for visitation. Grandfather then filed objections to the magistrate's decision. The trial court held a hearing on Grandfather's objections, and overruled the objections in part and sustained them in part. The trial court then ordered supervised visitation between Grandfather and K.C.

{¶ 5} Grandfather appealed the trial court's decision after dismissing his counsel. Proceeding pro se, Grandfather filed a nonconforming brief with this court, which lacked enumerated assignments of error. Mother then moved to dismiss Grandfather's appeal based on Grandfather's deficient brief. However, this court denied Mother's motion to dismiss, finding instead that Grandfather's brief, while technically lacking enumerated assignments of error, did set forth an argument that the trial court erred in ordering

- 2 -

supervised visitation with K.C. We will therefore address Grandfather's arguments as they relate to the following general assignment of error.

{¶ 6} THE TRIAL COURT ERRED IN DENYING APPELLANT UNSUPERVISED COMPANIONSHIP VISITATION WITH HIS GRANDDAUGHTER.

{¶ 7} Grandfather's arguments essentially challenge the trial court's decision to grant supervised visitation with K.C. rather than granting unsupervised visitation according to the visitation schedule Grandfather suggested to the court.

{¶ 8} According to R.C. 3109.12(A), "if a child is born to an unmarried woman, the parents of the woman * * * may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child."[1] In order to determine whether a grandparent should have reasonable companionship or visitation rights, a court must find that the factors set forth in R.C. 3109.051(B)(1)(a) through R.C. 3109.051(B)(1)(c) have been met. These factors include,

> (a) The grandparent, relative, or other person files a motion with the court seeking companionship or visitation rights.
>
> (b) The court determines that the grandparent, relative, or other person has an interest in the welfare of the child.
>
> (c) The court determines that the granting of the companionship or visitation rights is in the best interest of the child.

---

1. Mother and Father received leave from this court to supplement the appellate record with proof that the parties have become married. Mother and Father's subsequent marriage set the stage for Mother to question in her brief whether the trial court had jurisdiction to order visitation because she is no longer an unmarried woman. However, Mother did not present this issue to the trial court for determination, nor did she assign as error to this court that the trial court lacked jurisdiction to proceed. Even so, R.C. 3109.12(A) specifically makes reference to a grandparent's right to request reasonable visitation should the grandchild be born to an unmarried woman. Mother does not deny that at the time she gave birth to K.C., she was an unmarried woman. Moreover, R.C. 3109.12(B) goes on to state that "the marriage or remarriage of the mother or father of a child does not affect the authority of the court under this section to grant the * * * relatives of the mother of the child reasonable companionship or visitation rights with respect to the child." Therefore, the trial court had jurisdiction to determine whether Grandfather should have visitation with K.C. according to R.C. 3109.12(A) despite Mother and Father's subsequent marriage.

{¶ 9}   The court found that the first two conditions listed in R.C. 3109.051(B)(1)(a) and (b) were met.  In considering subsection (c), the trial court examined the best interest factors set forth in R.C. 3109.051(D), which include,

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 10} The court considered the facts as they related to the factors within R.C. 3109.051(D) and found that supervised visitation was warranted. After reviewing the record, we do not find that the trial court's decision was an abuse of discretion.

{¶ 11} Regarding the prior interaction and interrelationship of the child with Mother and Grandfather, the court heard evidence that Mother has been the child's sole-caregiver her entire life and that the child has a very close relationship with Mother. While Grandfather has visited with the child on several occasions in the past, the visits were sporadic given that Grandfather and the child have not lived in close proximity to one another.

{¶ 12} The court also considered the geographical location of the parties, and that at the time of the hearing, Mother lived in North Carolina and Grandfather lived approximately 12 hours away in Florida. Despite the distance between North Carolina and Florida being closer than Ohio and Florida, the parties still live a good distance away from each other, making frequent visitation difficult.

{¶ 13} The court heard evidence that neither Mother nor Grandfather are employed or have any particular work schedule. However, Mother testified that K.C., who was four years old at the time of the hearing, was involved in various activities and would soon be enrolled in preschool. Otherwise, the court heard little evidence regarding the child's adjustment to her new home and community. The court did not interview the child.

{¶ 14} Regarding the health and safety of the child, the court heard evidence that Mother has several concerns regarding unsupervised visitation. Mother relayed to the court her concern that Grandfather kissed K.C. on the lips,[2] kept pornographic materials in his home, currently displays nude artwork in his home, stares at K.C., has touched the child's arm, and placed his finger in K.C.'s pocket. Mother also alluded to instances in Mother's own

_____

2. Mother testified that she did not see the kiss, but that she saw the child after Grandfather kissed her and that K.C. was visibly upset by the kiss and continues to talk to people about the kiss.

childhood where Grandfather took a bath with Mother when she was six years old, and later walked in on Mother when she was naked in her bedroom after showering. Mother also expressed concerns that Grandfather, who has a heart condition and is hearing impaired, kept his medication where K.C. could reach it and drinks non-alcoholic beer in front of the child.

{¶ 15} Grandfather admitted that he kept pornographic materials in his private bathroom in the past, that he keeps nude artwork on his walls at home, that he use to give Mother baths, and that he accidentally walked in on Mother when she was a teenager after she had showered. Grandfather, however, vehemently denied that he ever sexually abused Mother, had any inappropriate sexual contact with her, or behaved in any sexualized manner toward her or K.C. Grandfather also stated that when he kissed K.C., it was a "peck" on the lips and that he and the child laughed about the kiss. Grandfather admitted to drinking non-alcoholic beer in front of the child, but denied that he ever left his medication within K.C.'s reach.

{¶ 16} Regarding the physical health of the parties, the court heard evidence that Grandfather has a heart condition that requires him to take medication. Grandfather testified that he gave up alcohol when he was diagnosed with his heart condition, and that he tries to live a healthier lifestyle. Grandfather also has a hearing impairment and wears hearing aids. K.C. is generally healthy, but has food allergies.

{¶ 17} The trial court considered that K.C. is an only child, and has no siblings. There was no evidence submitted on either party's willingness to facilitate visitation rights, or whether either party denied visitation rights as ordered by a court. Grandfather testified that he has never been convicted of any crime involving abuse or neglect of a child, nor has he acted in any manner resulting in a child being abused or neglected.

{¶ 18} Mother and Father both stated their desire that Grandfather not have unsupervised visitation with K.C. Mother testified that she would be willing for the entire family to gather together to visit with K.C., and that she would not be opposed to Grandfather visiting with K.C. so long as Mother could supervise the visits. Grandfather requested unsupervised visitation, and testified that he would rather not have Mother present when he visits K.C.

{¶ 19} After balancing all of the factors, the trial court declined to adopt the magistrate's recommendation that Grandfather be denied visitation, and granted Grandfather supervised visitation. We do not find that the trial court's order was an abuse of discretion. Grandfather will be afforded the opportunity to visit with K.C. and cultivate his relationship with her, and Mother will be afforded the opportunity to rest assured that nothing improper will occur during the visits.

{¶ 20} Beyond the general balancing of the best interest factors, Grandfather raises two specific arguments as to why the trial court abused its discretion in granting supervised visitation. First, Grandfather devotes much of his brief to arguing that Mother unfairly surprised and "ambushed" him at the hearing by having Father submit a letter to the court regarding Father's opposition to Grandfather having unsupervised visitation with K.C. However, Grandfather never expressed any such argument to the magistrate or trial court other than arguing that Father's letter was hearsay.

{¶ 21} While it may be true that Grandfather was unaware that Father opposed unsupervised visitation between Grandfather and K.C., that does not create a situation where Grandfather was "ambushed" at the hearing. Grandfather's counsel specifically asked the magistrate to consider the letter for the limited purpose to establish that Father acknowledged service of Grandfather's complaint. Grandfather, other than arguing hearsay, never argued that he was "ambushed" by Father's letter. Nor did Grandfather request a

- 8 -

continuance or suggest that he was not prepared to proceed with the hearing once Father's letter was discussed at the hearing.

{¶ 22} Grandfather did argue that the letter should not have been considered by the magistrate because it was hearsay. In the letter, Father stated that he was unable to attend the hearing because he lived and worked in Florida and could not appear in Ohio. Father also stated his desire that Grandfather not have unsupervised visitation with K.C. Even if the trial court should not have considered the letter as inadmissible hearsay, however, the record does not indicate that Grandfather would have been granted unsupervised visitation with K.C. absent Father's letter. The trial court based its decision on a comprehensive analysis of the pertinent statutory factors, the vast majority of which involved Mother's concerns about Grandfather's past actions toward her and several instances regarding Grandfather's actions toward K.C. Father's opinion was pertinent to only one factor, and was cumulative to the opinion expressed by Mother. *See In re Lane*, 4th Dist. No. 02CA61, 2003-Ohio-3755 (affirming order of supervised visitation despite hearsay being admitted into the record where the hearsay was cumulative to other evidence already offered); and *In re Spurlock Children*, 12th Dist. Nos. CA90-01-013, CA90-01-014, 1992 WL 12778 (Jan. 27, 1992) (finding admittance of hearsay harmless where reports containing hearsay were cumulative to other evidence).

{¶ 23} Grandfather also argues that he received ineffective assistance of counsel because his counsel did not emphasize to the trial court to a sufficient degree that Grandfather had no criminal record and was never charged with any sexually-oriented crimes.[3] Ineffective assistance of counsel claims do not apply in cases where a court is

---

3. Grandfather also raises an unsubstantiated and un-argued allegation in his brief regarding his counsel's failure to argue that Mother was an unfit parent. This court will not discuss Grandfather's allegations. We are mindful that Grandfather is proceeding pro se. However, this court will not entertain Grandfather's bald assertions in his brief when those assertions were not raised below and are unsupported by the record.

merely determining visitation rights, rather than possibly terminating a parent's parental rights. *In re Palmer Children*, 5th Dist. No. CT2006-0009, 2006-Ohio-4747. Instead, parties to a civil action voluntarily choose their own attorneys and "cannot avoid the consequences of the acts or omissions of their selected representative." *Luna-Corona v. Esquivel-Parrales*, 12th Dist. No. CA2008-07-175, 2009-Ohio-2628, ¶ 42, citing *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 152 (1976). Therefore, there is no need to address Grandfather's assertions as to his attorney's effectiveness.

{¶ 24} Having reviewed the record, the trial court did not abuse its discretion in ordering supervised visitation. As such, we reject Grandfather's arguments and overrule his assignment of error.

{¶ 25} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.