[Cite as *Brown v. Heitman*, 2017-Ohio-4032.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

TIFFANY BROWN, DECEASED,

    PLAINTIFF-APPELLEE,              CASE NO.  8-16-21

    v.

BRIAN D. HEITMAN,

    DEFENDANT-APPELLEE.          O P I N I O N


[LAWRENCE BROWN - THIRD-PARTY
INTERVENER-APPELLANT]


Appeal from Logan County Common Pleas Court
Juvenile Division
Trial Court No. 08-AD-090

Judgment Affirmed

Date of Decision:   May 30, 2017


APPEARANCES:

    *Miranda A. Warren* for Appellant

    *Sheila E. Minnich* for Appellees, Julie Taylor and Daniel Heitman

**ZIMMERMAN, J.**

{¶1} Third Party Intervener-appellant, Lawrence Brown ("Larry") brings this appeal from the November 4, 2016 judgment entry of the Logan County Common Pleas Court, Juvenile Division, granting Third Party Interveners-appellees, Julie Taylor ("Julie") and Daniel Heitman ("Dan"), grandparent visitation with the minor children in this case, Gage ("Gage") and Gavyn ("Gavyn") Heitman.

### *Facts and Procedural History*

{¶2} Gage and Gavyn Heitman are the sons of Tiffany Brown ("Tiffany") and Brian Heitman ("Brian"). Tiffany and Brian were never married. Larry Brown and Deb Neeley, the maternal grandparents, are Tiffany's parents. Brian's parents, the paternal grandparents, are Julie and Dan.

{¶3} On February 11, 2011, Tiffany was murdered. Prior to her death, Tiffany was the primary caregiver of Gage and Gavyn. However, both Julie and Dan often watched Gage and Gavyn on the weekends while Tiffany worked. (Tr. pg. 6, 32). It is noteworthy that while Gage and Gavyn were young, Brian had a significant drug problem and was not a part of their lives. Ultimately, Brian was determined to be an unfit parent by the trial court on September 14, 2011. (Doc. 63).

{¶4} After Tiffany's death, Larry and his wife, Jill Brown ("Jill"), filed for Legal Custody of Gage and Gavyn in the trial court on March of 2011. (Doc. 34).

On September 14, 2011, the trial court filed its judgment entry naming Larry and Jill the residential parents and legal custodians of Gage and Gavyn. (Doc. 63). The entry was silent as to visitation of the boys with any relative, but Larry and Jill permitted Julie and Dan (in addition to other family members) visitation on alternating weekends from Friday to Sunday. However, Larry and Jill did not provide visitation to Brian because of his drug problems.

{¶5} In February, 2014, after Brian was released from a drug rehabilitation program, Larry and Jill decreased the weekend visitation between the boys and family members to just one overnight visit per weekend. This was due, in part, to the boys' increasingly busy schedule. (Tr. pg. 69).

{¶6} Because of the decrease in visitation, Julie and Dan filed a motion to intervene as parties in the boys' legal custody case on August 26, 2014. The trial court granted their motion on September 15, 2014. Contemporaneous with the intervention request, Julie and Dan also filed a motion for temporary visitation (of Gage and Gavyn) along with a motion for grandparent visitation.

{¶7} On January 29, 2015, the magistrate filed a Magistrate's Order appointing attorney Elizabeth Mosser as the guardian-ad-litem ("GAL") in the case. (Doc. 94). Ms. Mosser filed her report with the trial court on March 18, 2015. (Doc. 103).

{¶8} On November 5, 2015, a hearing on the visitation motions occurred before the trial court's magistrate. Testimony was received from the parties, the boys' counselor, and the GAL.

{¶9} The magistrate found that Gage and Gavyn had adjusted well to living with Larry and Jill; were doing well in school; and were involved in a variety of activities. The magistrate further found that Gage and Gavyn's father, Brian, had a serious drug addiction and had not been a "consistent or reliable" person in their lives. Moreover, the magistrate found that the paternal grandparents, Julie and Dan, had been a consistent presence in the Gage and Gavyn's life, especially since the death of their mother. The magistrate further found Julie was instrumental in facilitating the boys' relationship with their half-siblings who resided in Kentucky. (Doc. 143).

{¶10} The magistrate concluded that it was important for Gage and Gavyn to continue to nurture a relationship with their paternal grandparents as well as their half-siblings and recommended visitation be awarded to Julie and Dan, which was in contradiction to the recommendation of the GAL.

{¶11} Both parties objected to the magistrate's decision. Larry and Jill argued the magistrate erred in granting the paternal grandparents motion to intervene and by granting the paternal grandparents visitation with the boys. (Doc. 154). Julie and Dan argued the Magistrate gave undue weight to Larry and Jill's

wishes which resulted in reduced visitation for the paternal grandparents. (Doc. 162).

{¶12} On September 8, 2016, the trial court overruled all objections to the magistrate's decision, finding the magistrate's decision to be "reasonable and appropriate and without error" and adopted its findings and recommendations. (Doc. 164).

{¶13} On November 4, 2016, the trial court filed its judgment entry granting grandparent visitation to Julie and Dan. Julie and Dan were each granted visitation one time per month (amounting to twice a month visitation) from Saturday at 10:00 a.m. to Sunday at 6:00 p.m. Both also received summer visitation of one week each and holiday visitation in accordance with the Logan County Standard Rule for non-residential parents, to split as they mutually agreed.

{¶14} Larry filed his notice of appeal on December 1, 2016 raising the following four assignments of error for our review.

**ASSIGNMENT OF ERROR NO. I**

**IT WAS AN ABUSE OF DISCRETION WHEN THE TRIAL COURT FAILED TO CONDUCT AN INDEPENDENT DE NOVO REVIEW OF THE MAGISTRATES [SIC] DECISION**

**ASSIGNMENT OF ERROR NO. II**

**IT WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE TRIAL COURT UPHELD THE MAGISTRATES [SIC]**

**DECISION GRANTING COURT ORDERED GRANDPARENT VISITATION**

**ASSIGNMENT OF ERROR NO. III**

**IT WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE TRIAL COURT WENT AGAINST THE RECOMMENDATION OF THE GUARDIAN AD LITEM**

**ASSIGNMENT OF ERROR NO. IV**

**IT WAS AN ABUSE OF DISCRETION WHEN THE TRIAL COURT PERMITTED THE PATERNAL GRANDPARENTS TO JOIN**

### *First Assignment of Error*

**{¶15}** In his first assignment of error, Larry asserts the trial court abused its discretion in failing to conduct an independent *de novo* review of the magistrate's decision. We disagree.

**{¶16}** First, we note that whether a trial court conducts an independent review of a magistrate's decision is not a discretionary matter, rather, it is a matter of law pursuant to Civ.R. 53(D)(4)(d) which states, in its pertinent part, as follows:

> **\* \* \*. In ruling on objections, the court *shall* undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.  (Emphasis added).**

{¶17} The trial court does not sit in the position of a reviewing court when reviewing the referee's report; rather the trial court must conduct an independent review of the facts and conclusions contained in the report. *Inman v. Inman*, 101 Ohio App.3d 115, 118, citing *DeSantis v. Soller*, 70 Ohio App.3d 226, 232 (1990).

{¶18} In the case at hand, Larry fails to direct us to any evidence in the record that indicates the trial court failed to conduct its independent review. "[W]hen independently reviewing the magistrate's decision, and in the absence of an affirmative demonstration the trial court applied an incorrect standard, given the presumption [of] regularity, we presume the trial court applied the correct standard." *Rudduck v. Rudduck*, 5th Dist. Licking No. 98CA85, unreported, 1999 WL 436818, at *4 (1999).

{¶19} In our review of the trial court's judgment entry adopting the magistrate's decision, we determine that the trial court conducted its independent review of Larry's objections to magistrate's decision. The trial court's judgment entry clearly discusses Larry's two objections to the magistrate's decision. First, the trial court addressed Larry's objection concerning joining Julie and Dan as parties to the case. (Doc. 164 Pg. 2). The trial court then reviewed Larry's second objection which addressed whether it was in the best interests of Gage and Gavyn to have visitation with their paternal grandparents. (*Id*. Pg. 3). Thereafter, the trial court concluded its independent review by stating:

> **\* \* \* After review of the evidence presented, as well as the Decision, and the parties' objections thereto, the Court finds that the Magistrate's recommendations are reasonable and appropriate in light of the evidence presented.** (Doc. 164).

We therefore find the trial court, while not necessarily condoning the brevity of its judgment entry, conducted its independent review of this matter pursuant to Civ.R. 53.

{¶20} Accordingly, Larry's first assignment of error is without merit and overruled.

### *Second Assignment of Error*

{¶21} In his second assignment of error, Larry contends it was an abuse of discretion and against the manifest weight of the evidence for the trial court to uphold the magistrate's decision granting court ordered grandparent visitation.

{¶22} Larry argues that, as the legal custodians of Gage and Gavyn, he and Jill should be afforded the same rights to decision making as natural parents. Specifically, he asserts that the trial court should have given their wishes "great deference" and should not have granted visitation to Julie and Dan.

{¶23} Larry argues that R.C. 3109.051(D)(15) requires the trial court to consider "the wishes and concerns of the child's parents" when granting visitation to a nonparent. Specifically, Larry argues that the trial court did not afford their wishes special weight as required by *Troxel v. Granville*, 530 U.S. 57 (2000) when visitation was granted to the paternal grandparents. We disagree.

**{¶24}** R.C. 3109.12(B) provides that a trial court may grant reasonable visitation rights to grandparents if the court determines that such visitation is in the child's best interests. "The trial court has discretion as to visitation issues, and its decision will not be reversed absent an abuse of discretion, such that the decision is unreasonable, arbitrary or unconscionable." *In re S.K.G.*, 12th Dist. Clermont No. CA2008-11-105, 2009-Ohio-4673, ¶21, *Anderson v. Anderson,* 147 Ohio App.3d 513, 2002-Ohio-1156, ¶18. "An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable." *Brammer v. Meachem*, 3rd Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When determining whether to grant visitation rights to a grandparent, the trial court is required to consider the factors listed in division (D) of section 3109.051 of the Revised Code.[1] These factors are:

> **(1)   The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;**
>
> **(2)   The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;**
>
> **(3)   The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school**

---

[1] Some of the best interest factors apply only to parent's visitation, and therefore do not apply to this case. *See* R.C. 3109.051(D)(10), (11), (13) and (14).

**schedule, and the child's and the parents' holiday and vacation schedule;**

**(4)   The age of the child;**

**(5)   The child's adjustment to home, school, and community;**

**(6)   If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;**

**(7)   The health and safety of the child;**

**(8)   The amount of time that will be available for the child to spend with siblings;**

**(9)   The mental and physical health of all parties;**

**(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;**

**(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;**

**(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(14) Whether either parent has established a residence or is planning to establish a residence outside this state;**

**(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;**

**(16) Any other factor in the best interest of the child.**

{¶25} Applying the relevant best interest factors to this case reveals that a visitation order is in Gage and Gavyn's best interest. Specifically, in the magistrate's decision of January 19, 2016, the magistrate found as follows:

" * * *. As to the age of the children, Gage just turned 10 and Gavyn is 8½ years old. See R.C. 3109.051(D)(4). By all accounts, the boys have adjusted well to living with Mr. and Mrs. Brown. There are no concerns regarding school, and they are involved in a number of activities. Gage plays several sports and Gavyn is in scouting and plays the piano. The Browns are to be commended on the way they have helped these boys to be so well-rounded. See R.C. 3109.051(D)(5). There was no *in camera* interview conducted in this matter. See R.C. 3109.051(D)(6). No concerns regarding the health and safety of the children were raised. See R.C. 3109.051(D)(7). There were no stated concerns with the mental or physical health of any of the parties. See R.C. 3109.051(D)(9). There was nothing to suggest that any of the parties had engaged in any acts which are the subject of Revised Code 3109.051(D)(12).

Geography does not pose any significant barrier to weekend visits with the paternal grandparents; the Browns reside near Cable, Ohio, while Mrs. Taylor lives in rural Zanesfield, Ohio (a drive of approximately 15 minutes), and Mr. Heitman lives near Sidney, Ohio (a drive of less than an hour). See R.C. 3109.051(D)(2).

One of the more substantive best interest considerations in this case is "[t]he prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity." R.C. 3109.051(D)(1). The boys' mother was murdered in 2011. Their father suffers from a serious drug addiction and has not been a consistent or reliable presence in the boys' lives. Maternal grandfather Lawrence Brown and his wife Jill stepped up and petitioned the Court for custody of the children, they have been a positive, stabilizing influence for the boys. Maternal grandmother Deb Neeley has maintained involvement with the boys, as has maternal aunt Bobbie Jo Pierce.

> **The paternal grandparents have been a consistent presence in Gage's and Gavyn's lives as well, especially since the death of the boys' mother. The boys have two half-siblings, Owen and Brianna, who live in Kentucky with their mother. The Browns assert that they would facilitate the boys' relationship with their siblings. However, it is Mrs. Taylor who does the leg work in bringing her four grandchildren together. See R.C. 3109.051(D)(8).**
>
> **Available time is a point of contention between the parties. The parties' schedules are not an impediment to visitation. See R.C. 3109.051(D)(3). The involved adults work primarily, if not exclusively, on weekdays. There was a fair amount of testimony regarding the boys' social calendars. They are involved in a number of activities and are invitees to friends' birthday parties and the like. Further, the Browns believe that the boys are worn out from being away from home most weekends. * * * They want the boys to live "normal lives" and not have to give up birthday parties and sleepovers to accommodate grandparent visitation. For their parts, both Mrs. Taylor and Mr. Heitman seem willing to transport the boys to parties and extra-curricular activities should they occur during scheduled visits."** (Doc. 143 Pg. 4-6).

{¶26} In reviewing the record, we find the trial court properly reviewed and discussed the factors under R.C. 3109.051(D) when analyzing the best interests of Gage and Gavyn. Thus, we find the trial court's findings were not an abuse of discretion because competent and credible evidence exists in the record as to whether it was in the best interests of Gage and Gavyn to have visitation with their paternal grandparents. Accordingly, Larry's second assignment of error is not well taken and is overruled.

-13-

### *Third Assignment of Error*

**{¶27}** In his third assignment of error, Larry argues that it was an abuse of discretion and against the manifest weight of the evidence when the trial court failed to follow the recommendation of the GAL. Specifically, Larry argues that the magistrate inappropriately rejected the GAL's report by failing to discuss his reasons for not following the GAL's recommendation.

### *Standard of Review*

**{¶28}** Before analyzing the merits of this assignment of error, we note that Larry failed to object to this matter when he objected to the magistrate's decision. Civ.R. 53(D)(3)(b)(iv) provides:

> ***Waiver of right to assign adoption by court as error on appeal.*** **Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).**

**{¶29}** Accordingly, because of Larry's failure to object, we are bound to review this assignment of error under the plain error standard. See *McBroom v. Loveridge*, 6th Dist. Lucas No. L-05-1391, 2006-Ohio-5908, ¶14. In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, addressing the applicability of the plain error doctrine to appeals of civil cases, the Supreme Court of Ohio stated:

> **"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving**

> **exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.**" *Id.,* at the syllabus.

### *Analysis*

**{¶30}** In our review of the record, we do not find that the trial court committed plain error for not following the GAL's recommendation. It is well settled that a trial court is not bound by the GAL's recommendations. "A trial court determines the guardian ad litem's credibility and the weight to be given to any report". *Galloway v. Khan*, 10th Dist. Franklin No. 06AP-140, 2006-Ohio-6637, ¶70, citing *Baker v. Baker*, 6th Dist. Lucas No. L-03-1018, 2004-Ohio-469, ¶30. See also, *Ferrell v. Ferrell*, 7th Dist. Carroll No. 01-AP-0763, 2002-Ohio-3019, ¶43 (holding that although the GAL's role is to investigate the children's situation and make a recommendation to the court what he or she believes is in the children's best interest, the ultimate decision is for the for the trial judge and not a representative of the children). As we noted above, the record contains competent, credible evidence in support of grandparent visitation, by the following finding by the magistrate:

> **"The parental grandparents have been a consistent presence in Gage's and Gavyn's lives as well, especially since the death of the boys' mother. They boys have two half-siblings, Owen and Brianna, who live in Kentucky with their mother. The Browns assert that they would facilitate the boy's relationship with their siblings. However, it is Mrs. Taylor who does the leg work in**

-15-

Case No. 8-16-21

**bringing her four grandchildren together.** *See* **R.C. 3109.051(D)(8)."** (Doc. 143 Pg. 5-6).

**{¶31}** In order for plain error to exist, "* * * reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice". Thus, "appellate courts must proceed * * * only * * * where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself". *Skydive Columbus Ohio, L.L.C. v. Litter*, 10th Dist. Franklin No. 09AP-563, 2010-Ohio-3325, ¶13, citing *Unifund CCR Partners v. Hall*, 10th Dist. Franklin No. 09AP-37, 2009-Ohio-4215, ¶22, quoting *Goldfuss*.

**{¶32}** Thus, in our review of this assignment, we find Larry's argument unpersuasive and that plain error was not committed by the trial court in its failure to follow the recommendation of the GAL.

**{¶33}** Accordingly, Larry's third assignment of error is overruled.

### *Fourth Assignment of Error*

**{¶34}** In his fourth assignment of error, Larry claims it was an abuse of discretion when the trial court permitted the paternal grandparents to intervene as parties to the case. We disagree.

**{¶35}** Generally, grandparents have no legal rights of access to their grandchildren. *In re Whitaker*, 36 Ohio St.3d 213, 214; *In re Martin*, 68 Ohio St.3d 250, 1994-Ohio-506. Additionally, grandparents have no constitutional right of

-16-

association with their grandchildren. *In re Schmidt*, 25 Ohio St.3d 331, 336 (1986); *Martin*, supra.

**{¶36}** Nevertheless, the decision to grant or deny a motion to join a party to a case rests in the sound discretion of the trial court. *Likover v. City of Cleveland*, 60 Ohio App.2d 154, 159 (1978). Accordingly, we will not reverse the trial court's grant of a motion to join unless the trial court abused its discretion. *Young v. Equitec Real Estate Investors Fund*, 100 Ohio App.3d 136, 138 (1995); *Widder & Widder v. Kutnick*, 113 Ohio App.3d 616, 624 (1996). The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶37}** In this case, in its judgment entry dated September 8, 2016, the trial court states as follows:

> **Mr. Brown argues that "no Statute of Ohio confers an unconditional right to intervene as the grandparent of a minor child whose custody is at issue." However, he cites Revised Code 3109.051(B)(2), which allows a court to grant visitation rights to any grandparent in divorces, dissolutions, legal separations, annulments, or child support proceedings. Clearly this statute contemplates that grandparents and others can and will be joined as parties to these types of proceedings.** (Doc. 164).

**{¶38}** In our review of the record, we find the trial court did not abuse its discretion by granting Julie and Dan's motion to intervene because each had established a relationship with Gage and Gavyn, each had maintained frequent

contact with the boys since the passing of their mother, and the boys enjoyed such relationship.[2]  Further, we find Larry's argument ironic since his status as the boys' legal custodian results from the trial court's order permitting him and Jill, as grandparents, the right to *intervene* and become parties to this case.  And, Julie and Dan's intervention motion closely parallel's Larry and Jill's as both relate to what is in the boys' best interests.  Thus, we find no abuse of discretion by the trial court in granting Julie and Dan's motion to intervene as parties.

{¶39} Accordingly, Larry's fourth assignment of error is overruled.

{¶40} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment entry of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**

---

[2] We further note that pursuant to R.C. 2109.11, Julie and Dan could have filed a complaint with the juvenile court seeking visitation rights with their grandchildren, such action being subject to the juvenile court's determination that visitation would be in the best interest of the children.  *See* R.C. 3109.11.