[Cite as *In re A.B.*, 2019-Ohio-1940.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

IN RE:

      **A.B.**
      **C.G.**

**[COURTNEY GRIFFIS - APPELLANT]**

**CASE NO. 17-18-09**

**O P I N I O N**

---

**Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2012 CUS 0027**

**Judgment Affirmed**

**Date of Decision: May 20, 2019**

---

**APPEARANCES:**

    *Matthew J. Kentner* **for Appellant**

    *Jay M. Lopez* **for Appellee**

**PRESTON, J.**

{**¶1**} Appellant, Courtney Griffis ("Griffis"), appeals the July 16, 2018 judgment of the Shelby County Common Pleas Court, Juvenile Division. For the reasons that follow, we affirm.

{**¶2**} Griffis and Joshua Bowling ("Joshua") are the parents of A.B. and C.G., born October 27, 2009 and July 19, 2012, respectively. Griffis and Joshua have never married. On February 27, 2013, Griffis and Joshua entered into a shared parenting plan in which Griffis and Joshua received relatively equal amounts of parenting time with A.B. and C.G. (Doc. No. 69). On January 5, 2017, Griffis was awarded sole custody of the minor children and Joshua was granted a right to supervised visitation with the children at Griffis's discretion. (Doc. No. 145). However, Joshua has not regularly exercised his visitation rights or been meaningfully involved in the lives of A.B. and C.G. for some time.

{**¶3**} On November 2, 2017, Jeff and Jeanette Bowling (collectively "the Bowlings"), A.B. and C.G.'s paternal grandfather and step-grandmother, filed a motion for visitation and interim visitation with A.B and C.G. (Doc. No. 151). On January 25, 2018, the parties entered into an agreed interim order granting the Bowlings visitation with A.B. and C.G. pursuant to a phased-in schedule. (Doc. No. 178). Under the phased-in schedule, visitation commenced on January 27, 2018 and

culminated in the Bowlings receiving visitation in accordance with Shelby County Loc.R. 22 ("Loc.R. 22"). (*Id.*).

{¶4} On July 16, 2018, the trial court granted the Bowlings visitation with A.B. and C.G. in accordance with Loc.R. 22, with the Bowlings being considered the "Father" for purposes of determining the visitation schedule. (Doc. No. 228). Therefore, the Bowlings receive visitation with the minor children every other weekend from Friday evening to Sunday evening as well as a weekly midweek visitation. (*Id.*). Additionally, the Bowlings were designated the "Father" for the purposes of holidays and days of special meaning under Loc.R. 22. (*Id.*).

{¶5} On August 10, 2018, Griffis filed her notice of appeal. (Doc. No. 232). She raises one assignment of error.

### Assignment of Error

**The trial court erred granting Plaintiff-Appellees were entitled to visitation with the children pursuant to Local Rule 22 as the same was not supported by the record and was an abuse of discretion and against the manifest weight of the evidence.**

{¶6} In her assignment of error, Griffis contends it was an abuse of discretion and against the manifest weight of the evidence for the trial court to award the Bowlings visitation in accordance with Loc.R. 22. (Appellant's Brief at 12). Specifically, Griffis argues that the trial court failed to take into consideration the R.C. 3109.051(D) statutory factors, particularly R.C. 3109.051(D)(15), and that the trial court's decision is not supported by the record. (*Id.* at 12-13).

{¶7} A trial court may grant reasonable visitation rights to a grandparent under R.C. 3109.12(B) if the court determines that such visitation is in the child's best interest. *In re L.A.*, 3d Dist. Seneca No. 13-18-12, 2018-Ohio-3219, ¶ 9. "The trial court has discretion as to visitation issues, and its decision will not be reversed absent an abuse of discretion, such that the decision is unreasonable, arbitrary, or unconscionable." *Brown v. Heitman*, 3d Dist. Logan No. 8-16-21, 2017-Ohio-4032, ¶ 24, citing *In re S.K.G.*, 12th Dist. Clermont No. CA2008-11-105, 2009-Ohio-4673, ¶ 21, citing *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, ¶ 21 (7th Dist.). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶8} When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons*

*v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). "Such deference is necessary because oftentimes the crucial evidence lies in the demeanor and attitude of the parties, which cannot be transcribed into the record." *In re K.M.-B.*, 6th Dist. Lucas No. L-15-1037, 2015-Ohio-4626, ¶ 45, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶9} When determining whether grandparent visitation would be in a child's best interest, the trial court shall consider all relevant factors, including those specifically enumerated in R.C. 3109.051(D). *Id.* at ¶ 44, citing *In re K.C.*, 12th Dist. Butler No. CA2012-08-160, 2013-Ohio-1949, ¶ 8. *See Ward v. Wilson*, 5th Dist. Ashland Nos. 16-COA-025 and 16-COA-027, 2017-Ohio-579, ¶ 17 ("'Pursuant to R.C. 3109.051(D), the trial court shall consider the * * * factors enumerated therein, and in its sound discretion shall determine visitation that is in the best interest of the child.'"), quoting *Braatz v. Braatz*, 85 Ohio St.3d 40, 1999-Ohio-203, paragraph two of the syllabus. Here, Griffis does not argue that the trial court erred in finding that grandparent visitation is in the minor children's best interest. In fact, Griffis conceded during the hearing that it was in the minor children's best interest for the Bowlings to have some, albeit a limited amount, of visitation with the minor children. Instead, Griffis argues that the trial court erred in the *extent* of visitation it awarded the Bowlings by granting them visitation in accordance with Loc.R. 22 because the trial court failed to give her opinion the

requisite "special weight."  (Appellant's Brief at 12-13).  Thus, our analysis will focus on the trial court's finding under R.C. 3109.051(D)(15) which states that the court must consider, "[i]n relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court."

{¶10} Grandparents seeking visitation rights bear the burden of proving that visitation is in the best interest of the minor grandchildren.  *See Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 45. There is a rebuttable presumption that "fit parents act in the best interest of their children." *Troxel v. Granville*, 530 U.S. 57, 68, 120 S.Ct. 2054 (2000).  Therefore, absent an allegation of parental unfitness, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation * * *." *Harrold* at ¶ 12.  The requirement that trial courts give special weight to the parents' wishes "is not minimized simply because Ohio has chosen to enumerate 15 other factors that must be considered by the trial court in determining the child's best interest in the visitation context." *Id.* at ¶ 43.  However, "the United States Supreme Court plurality [in *Troxel*] did not declare [the parents' wishes] factor to be the sole determinant of the child's best interest." *Id.* at ¶ 44.  "Moreover, nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest." *Id.* When determining whether granting nonparental visitation is in the child's best

interest, the parent's wishes and concerns must be weighed against the other factors under R.C. 3109.051(D). *Celek v. Celek*, 1st Dist. Hamilton No. C-08117, 2009-Ohio-4990, ¶ 10. "[T]he manner in which this standard is to be applied to each case must be 'elaborated with care.' Thus, there must be some meaningful rationale given for either abiding by or overriding the wishes of the parent." *Id.*, quoting *Troxel* at 73.

**{¶11}** As a preliminary matter, Griffis makes a cursory statement that the trial court "erred when it failed to consider the remaining factors" under R.C. 3109.051(D). (Appellant's Brief at 13). However, Griffis fails to establish how the trial court failed to consider the remaining factors. Moreover, the general rule applies that in visitation matters, "'[a] reviewing court will presume that the trial court considered relevant statutory factors in the absence of evidence to the contrary.'" *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, ¶ 12 (2d Dist.), quoting *Minoughan v. Minoughan*, 2d Dist. Montgomery No. 18089, 2000 WL 799737, *2 (June 23, 2000); *In re DeCara*, 11th Dist. Portage No. 2001-P-0088, 2002-Ohio-6584, ¶ 10, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 356 (1981). Griffis does not cite to any evidence in the record suggesting that the trial court failed to consider the remaining factors under R.C. 3109.051(D). Accordingly, we presume that the trial court considered the relevant statutory factors.

{¶12} We conclude that the trial court did not abuse its discretion in granting the Bowlings visitation time in accordance with Loc.R. 22 over Griffis's objection. The record is clear that the trial court gave the requisite consideration to the concerns Griffis expressed at the final hearing and the record supports Loc.R. 22 visitation.

{¶13} During the final hearing, Griffis stated that she would not consent to the Bowlings receiving visitation time with the minor children under Loc.R. 22. (May 4, 2018 Tr. at 248). When asked her opinion on how often the Bowlings should have visitation with A.B. and C.G., Griffis stated that she believed once a month for approximately four hours would be in A.B. and C.G.'s best interest. (*Id.* at 245-246).

{¶14} In support of her objection to Loc.R. 22 visitation, Griffis advanced two specific concerns. First, Griffis expressed concern regarding A.B. and C.G.'s safety while in the Bowlings's care. (*Id.* at 236-242). Griffis also stated her concern that A.B. and C.G.'s other grandparents and Griffis's friends would not have ample opportunity to interact with A.B. and C.G. if the Bowlings received Loc.R. 22 visitation. (*Id.* at 246-248).

{¶15} In its judgment entry, the trial court specifically addressed Griffis's concern regarding A.B. and C.G.'s safety while in the Bowlings's care as follows:

> In August of 2016, *** the voluntary visitations with the [Bowlings]
> were terminated by the Mother. At that time the Mother decided she

was no longer willing to engage in the visitations based upon concerns that arose following an accident in which one of the minor children was injured while in the [Bowlings's] care during an out-of-state visitation.

It is undisputed that the minor child was involved in an accident while riding as a passenger on an ATV vehicle with a relative. The Court finds that the event, itself, was not the fault of the [Bowlings]. Regardless[,] as a result of the accident the child suffered minor bruises and contusions and also a scar on the chin that is still evident. After the accident[,] the visitations were terminated by Mother because of the [Bowlings's] failure to advise her of the accident and to seek immediate medical attention. Plaintiff Jeanette Bowling was sincere in her belief that the bruises and contusions did not need emergency care and, accordingly, she acknowledges that she made the decision not to notify the Mother or take the child to the emergency room. With the exception of the scar on the child's chin, the bruises and contusions did, in fact, heal. In hindsight[,] the [Bowlings] concur that the failure to notify Mother was a mistake and that they did not handle the matter appropriately.

Based upon this incident, Mother elected to terminate all future visitations because of her concern that she could not trust the [Bowlings] to keep her fully advised of issues regarding her children. It should be noted that there was no evidence that there were any other significant problems regarding the voluntary visitations prior to the accident. By all accounts[,] during the years preceding the accident the [Bowlings] had developed a solid, well-bonded and regular relationship with the children.

Following the Mother's termination of the visitation[,] the [Bowlings] continued to request visitation with the minor children, but, given the lack of success, eventually elected to file the pending motion.

The Court finds that the [Bowlings's] failure to contact and advise the Mother at the time of the accident was a mistake. The Court also finds that the event was an accident and that the [Bowlings's] regret in how they handled the matter was sincere.

The issue now before the Court is what is in the best interest of [the] minor children. The Court finds the children have a life-long relationship with the [Bowlings] and that this one incident is not a sufficient reason to effectively terminate that relationship.

(Doc. No. 228).

{¶16} With respect to Griffis's concern regarding the safety of the children under the Bowlings's care, it is undisputed that prior to approximately August 2016, the Bowlings regularly enjoyed visitation with A.B. and C.G. Griffis and the Bowlings testified that the Bowlings regularly exercised Joshua's parenting time when Joshua and Griffis operated under a shared parenting plan and that they continued to enjoy regular visitation with A.B. and C.G. after the termination of the shared parenting plan until approximately August 2016. (May 4, 2018 Tr. at 17-19, 23-24, 27, 33-34, 43-45, 47, 52-53, 55, 117-120, 122, 126-128, 152-153, 158-160, 241-243, 258-261, 268-270).

{¶17} The Bowlings's regular visitation with A.B. and C.G. was abruptly terminated by Griffis in approximately August 2016. (*Id.* at 17-19, 23-24, 44-45, 47, 52, 122, 127-128, 241). It is uncontested that A.B. was injured in an ATV accident in May 2016 when she was under the care of Jeanette Bowling ("Jeanette") during an out-of-state visitation. (*Id.* at 123-126, 150, 162, 236-239). A.B. sustained cuts and scrapes to her face and possible bruising to her torso from the accident, but did not sustain other injuries. (*Id.* at 125, 162-166, 236-239). (*See* Defendant's Exs. 4, 5, 6). As a result of the accident, A.B. now has a scar under her chin. (*Id.* at 162, 237).

{¶18} It is also undisputed that Jeanette did not inform Griffis that A.B. had been injured until Jeanette and A.B. returned from the trip several days later. (*Id.*

at 126-127, 162-163, 236). Jeanette did not seek medical treatment for A.B. at a medical facility immediately following the accident due to a good faith belief that A.B. did not require additional medical treatment. (*Id.* at 125-127, 163-166). Jeanette acknowledged at the hearing that she regrets not immediately informing Griffis of the accident and seeking medical treatment for A.B. (*Id.* at 126-127, 162-163). Griffis also acknowledged that she believed that Jeanette made a mistake and did not intentionally cause harm to A.B. (*Id.* at 263-264). Griffis and her mother, Michelle Earick ("Earick"), testified that they took A.B. to seek medical treatment immediately upon her return from the visitation and that aside from ointment to treat the superficial abrasions, no further medical intervention was necessary. (*Id.* at 200-201, 225-226, 238). Since the Bowlings have resumed visitations with the minor children, the children have not been injured and Griffis acknowledged that the Bowlings provided proper care to the children during these visitations. (*Id.* at 62-63, 266).

{¶19} As a result of the ATV accident, Griffis refused to permit A.B. and C.G. to visit with the Bowlings. (*Id.* at 127-128, 150, 241). The Bowlings attempted, unsuccessfully, for over a year to communicate with Griffis regarding visitation with the minor children before filing their motion for visitation. (*Id.* at 128, 150-151, 259-260). The Bowlings did not see A.B. and C.G. from

approximately August 2016 until after Griffis and the Bowlings entered into the agreed interim order on January 27, 2018. (*Id.* at 27-28, 44-45, 52-53, 150-151).

{¶20} Thus, the trial court's findings with respect to A.B. and C.G.'s safety in the Bowlings's care are supported by competent, credible evidence. The trial court thoroughly addressed Griffis's concern regarding the safety of the minor children as expressed to the trial court during the hearing, but upon weighing Griffis's concern against the other factors under R.C. 3109.051(D), found that her concerns did not outweigh the best interest of the minor children.

{¶21} In its July 16, 2018 judgment, the trial court also specifically addressed Griffis's concern regarding her other family and friends receiving sufficient time with A.B. and C.G. as follows:

> The Mother is requesting that no visitation be ordered and that the Court also take into account the fact that she would have to accommodate visitation with both maternal and paternal grandparents. The Mother, however, currently resides with her mother, the maternal grandmother of the children.
>
> * * *
>
> Mother also asserts that she will be relocating to Piqua with her boyfriend in the near future and is concerned that she would then have to accommodate visitation by both grandparents. This event has not

yet occurred. Moreover, if the visitation to be awarded to [the Bowlings] is the same as a standard order of visitation for a visiting father, then the Mother's situation would be no different than if the natural father were involved.

(Doc. No. 228).

**{¶22}** At the final hearing, Griffis also expressed concern regarding whether her other family and friends, particularly A.B. and C.G.'s paternal grandmother, Ruth Peltier ("Peltier"), and Earick, would receive ample time with A.B. and C.G. if the Bowlings received Loc.R. 22 visitation. (May 4, 2018 Tr. at 246-248). At the hearing, Peltier testified that she sees A.B. and C.G. whenever she contacts Griffis and asks to spend time with the children. (*Id.* at 106-107). She stated that she sometimes goes several months without seeing the children and sometimes she sees the children several times a month. (*Id.* at 106). Peltier stated that Griffis always allows her to see the children when she asks to see them unless she has other plans. (*Id.* at 106-107). Peltier further testified that since court-ordered visitation between A.B., C.G., and the Bowlings commenced, Griffis has not had to refuse Peltier contact and visitation with A.B. and C.G. (*Id.* at 107). Peltier also testified that she believes A.B. and C.G. love the Bowlings and that it is important for the children to have a relationship with them. (*Id.* at 111-112).

**{¶23}** Earick, the children's maternal grandmother, testified that Griffis lives with her part time and A.B. and C.G. live with her full time. (*Id.* at 213-216). When Griffis is not living with Earick, she resides with her boyfriend who lives in Miami County. (*Id.*). Griffis and Earick testified that Griffis intends to move to Miami County with her boyfriend and the minor children in the summer, but at the time of the hearing, this event had not yet occurred. (*Id.* at 215, 246-247). Additionally, Griffis's friend, Tammy Smith, testified that her amount of visitation with the minor children has not changed since the Bowlings were granted visitation with the minor children. (*Id.* at 179).

**{¶24}** At the final hearing, the Bowlings testified that they help A.B. and C.G. foster a relationship with the children's paternal extended family during their visitation. (*Id.* at 13, 30, 115-116). The Bowlings testified that when A.B. and C.G. are in their care, they interact with their extended family, including Jeanette's nieces and nephews and their paternal cousins, and the children have developed strong bonds with these extended family members. (*Id.*). These paternal family members are not invited to the maternal family functions and holiday celebrations. (*Id.* at 228).

**{¶25}** Thus, the trial court's findings with respect to Griffis's family receiving adequate time with A.B. and C.G. are supported by competent, credible evidence. The trial court thoroughly addressed Griffis's concern regarding other

extended family members receiving ample time with the minor children as expressed to the court during the hearing, but found that her concerns did not outweigh the best interest of the minor children.

**{¶26}** Moreover, the record indicates that the trial court had a basis for awarding Loc.R. 22 visitation to the Bowlings. In its judgment, the trial court addressed its decision to grant the Bowlings visitation in accordance with Loc.R. 22 as follows:

> The [Bowlings] are requesting that they be permitted Rule 22 visitation that would, essentially, take the place of a father's standard visitation schedule and restore them to the voluntary visitation schedule they previously enjoyed. As already ordered, the parties have been abiding by an agreed temporary order of visitation filed January 25, 2018 that has allowed [the Bowlings] visitation pursuant to Rule 22 after a short period of reunification.
>
> * * *
>
> Also problematic is the fact that the maternal grandmother and paternal step-grandmother admittedly do not get along. It is obvious to the Court that the friction between them contributes to the discord in the Mother's relationship with [the Bowlings]. As such[,] the Court finds it is in the best interest of the children to establish a regular, set

schedule for visitation rather than relying upon the parties to amicably agree.

* * *

Upon consideration of the above and the further evidence adduced at hearing, the Court finds that the [Bowlings] do have a bonded long-term relationship with the children and that the natural father is wholly unable and unwilling to engage in visitation with the children such that allowing the [Bowlings] visitation in his stead is in the best interest of the children.

(Doc. No. 228).

**{¶27}** The parties offered some conflicting testimony over the amount of visitation time the Bowlings had with the minor children prior to August 2016. Jeff Bowling ("Jeff") testified that A.B. and C.G. "almost lived with [the Bowlings]" from the time that they were born. (May 4, 2018 Tr. at 17). He opined that in an average 14-day cycle, the children would spend the night with the Bowlings "a week, maybe longer" and that they had the children for up to six weeks at a time. (*Id.*). Jeanette likewise testified that the minor children "pretty much lived with [the Bowlings]" and had bedrooms at their home. (*Id.* at 117-120). She stated that the children spent fairly equal, consistent time split between the Bowlings and Griffis. (*Id.* at 119-120). Jeanette testified that once the children started school, the

Bowlings no longer had the children every other week, but instead enjoyed visitation with the minor children approximately three weekends a month, from Friday through Sunday. (*Id.* at 152-153). Earick confirmed the Bowlings's testimony that when Griffis and Joshua operated under a shared parenting plan, the Bowlings provided care for A.B. and C.G. in Joshua's stead. (*Id.* at 210-211, 220-221). Additionally, Earick stated that once the minor children entered school, the Bowlings had the minor children approximately two full weekends a month during the school year. (*Id.* at 195). Griffis disagreed with the Bowlings's testimony that they had the children three weekends a month, but acknowledged that prior to August 2016, the minor children spent the entire weekend with the Bowlings "one or two weekends" a month. (*Id.* at 242).

{¶28} Additionally, Jeanette and Earick both testified that they have a strained relationship and often disagree. (*Id.* at 127, 226). On at least one occasion in the past, the Bowlings alerted the Department of Job and Family Services with concerns about the cleanliness of Earick's home, which led to an investigation and the subsequent removal of A.B. and C.G. from Earick's home for a period of time. (*Id.* at 20-22, 120-122, 207-210). The tension between Jeanette and Earick further intensified following the ATV accident. (*Id.* at 127, 135, 226).

{¶29} Thus, in awarding the Bowlings visitation in accordance with Loc.R. 22 over Griffis's objections, the trial court considered that Loc.R. 22 visitation is

similar to the visitation schedule the parties enjoyed prior to August 2016, that the Bowlings have long exercised Joshua's visitation, and the parties entered into an agreed interim order which culminated in Loc.R. 22 visitation. *See Harrold v. Collier*, 9th Dist. Wayne No. 06CA0010, 2006-Ohio-5634, ¶ 14 (finding "nothing unreasonable in the trial court's determination that the [grandparents'] visitation should approach that of a nonresidential parent" where the grandparents had acted in the stead of a parent in the past); *In re A.C.*, 9th Dist. Summit No. 23154, 2006-Ohio-6155, ¶ 20.

{¶30} While Griffis disagrees with the trial court's view of her wishes, the record demonstrates that the trial court gave her wishes and concerns the requisite special weight in making its decision regarding the best interest of the minor children. Having reviewed the entire record, we cannot conclude that the trial court abused its discretion when it awarded the Bowlings visitation in accordance with Loc.R. 22 as the trial court articulated some meaningful rationale for overriding the wishes of the custodial parent. We cannot conclude that the trial court's visitation order in accordance with Loc.R. 22 is an abuse of discretion as the trial court's decision is not unreasonable, unconscionable or arbitrary. Consequently, Griffis's assignment of error is overruled.

**{¶31}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concur.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**