[Cite as *Severns v. Foster*, 2019-Ohio-909.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

JOHN SEVERNS,

     PLAINTIFF-APPELLEE,          CASE NO. 9-18-21

     v.

AMBER FOSTER,          O P I N I O N

     DEFENDANT-APPELLANT.

---

**Appeal from Marion County Common Pleas Court**
**Family Division**
**Trial Court No. 16 PC 0105**

**Judgment Affirmed**

**Date of Decision:   March 18, 2019**

---

APPEARANCES:

    *Joel M. Spitzer* **for Appellant**

    *Rocky Ratliff* **for Appellee**

**PRESTON, J.**

{**¶1**} Defendant-appellant, Amber Foster ("Foster"), appeals the May 30, 2018 judgment of the Marion County Court of Common Pleas, Family Division, designating plaintiff-appellee, John Severns ("Severns"), as residential parent and legal custodian of A.S., Foster and Severns's minor daughter. For the reasons that follow, we affirm.

{**¶2**} On November 16, 2015, Foster gave birth to a daughter, A.S. Foster and Severns have never married. In the months immediately following A.S.'s birth, Foster and Severns tried to work on their relationship while co-parenting A.S. (*See* Apr. 17, 2018 Tr. at 98-100). However, their efforts proved unsuccessful.

{**¶3**} On June 10, 2016, Severns filed a complaint requesting "that he be awarded custody of [A.S.] or in the alternative be awarded shared parenting." (Doc. No. 1). That same day, Severns filed a motion for ex parte temporary orders asking the trial court to designate him as A.S.'s legal custodian during the pendency of the case. (Doc. No. 2). On June 14, 2016, the trial court denied Severns's motion for ex parte temporary orders. (Doc. No. 6).

{**¶4**} On July 7, 2016, the trial court issued temporary orders granting Severns parenting time with A.S. for a period of four hours on Tuesdays and Thursdays and for a period of four hours every other Saturday and Sunday in accordance with Marion County Family Court Rule 32. (Doc. No. 11).

{¶5} On October 3, 2016, Foster filed a motion to establish child support. (Doc. No. 20). That same day, Foster filed a motion requesting that the trial court appoint a guardian ad litem ("GAL") to evaluate A.S.'s best interest. (Doc. No. 23). On October 20, 2016, Severns filed a response to Foster's motion to appoint a GAL in which he did not oppose Foster's motion. (Doc. No. 24). On November 1, 2016, the trial court granted Foster's motion to appoint a GAL and appointed a GAL for A.S. (Doc. No. 32).

{¶6} On October 20, 2016, Severns filed a motion for shared parenting along with a proposed shared parenting plan. (Doc. No. 26).

{¶7} On November 8, 2016, Severns filed a motion and an amended motion for holiday visitation. (Doc. Nos. 34, 37). On November 15, 2016, the trial court issued agreed temporary orders granting Severns parenting time with A.S. "pursuant to Local Rule 32a for the upcoming holidays and/or until this case is resolved." (Doc. No. 38). In addition, the trial court designated Severns as "the non-residential parent for holiday visitation purposes during the pendency of this matter." (*Id.*).

{¶8} On April 27, 2017, Foster filed a motion for leave to file her answer to Severns's June 10, 2016 complaint out of rule. (Doc. No. 58). On May 1, 2017, the trial court granted Foster's motion to file her answer out of rule. (Doc. No. 59). That same day, Foster filed her answer to Severns's complaint as well as a

counterclaim requesting that the trial court establish child support, among other things. (Doc. No. 60).

{¶9} On May 9, 2017, Severns filed a motion to increase parenting time. (Doc. No. 61). On June 29, 2017, Severns filed a motion for new temporary orders. (Doc. No. 67). That same day, Foster filed a narrative affidavit regarding temporary orders. (Doc. No. 69). On August 15, 2017, the trial court issued agreed modified temporary orders granting Severns parenting time with A.S. on Mondays from 8:00 a.m. until 12:00 p.m., Tuesdays from 8:00 a.m. until 5:00 p.m., and on weekends in accordance with Marion County Family Court Rule 32(A). (Doc. No. 74). In addition, the trial court ordered that Foster's weekend parenting time with A.S. coincide with her weekend parenting time with A.S.'s half-sister granted in case number 15-PC-211. (*See id.*).

{¶10} The GAL filed his final report on April 6, 2018. (Doc. No. 84).

{¶11} A final hearing was held on April 16 and 17, 2018. (*See* Doc. No. 93); (Apr. 16, 2018 Tr. at 1); (Apr. 17, 2018 Tr. at 1). On May 30, 2018, the trial court filed its judgment designating Severns as the residential parent of A.S. (Doc. No. 93). The trial court granted Foster parenting time with A.S. in accordance with Marion County Family Court Rule 32(A) and ordered that Foster's parenting time with A.S. coincide with Foster's parenting time with A.S.'s half-sister. (*Id.*). In

addition, Foster was ordered to pay Severns $231.46 per month in child support. (*Id.*).

{¶12} Foster filed a notice of appeal on June 28, 2018. (Doc. No. 94). She raises three assignments of error, which we will address together.

## Assignment of Error No. I

**In support of the initial determination of parental rights and responsbilities [sic] for the minor child, the trial court erred as a matter of law and abused its discretion by determining there was sufficient evidence the parents could not make decisions jointly pursuant of Ohio Revised Code 3109.04**

## Assignment of Error No. II

**In support of the initial determination of parental rights and responsibilities for the minor child and pursuant of Ohio Revised Code 3109.04, the trial court erred against the weight of the evidence and abused its discretion in determining that the plaintiff-apellee [sic] should be granted cusotdy[sic].**

## Assignment of Error No. III

**In support of initial determination of parental rights and responsibilities for the minor child and pursuant of Ohio Revised Code 3109.04, the trial court erred and abused its discretion in determining that the defendant-appellant would not facilitate court ordered visitation.**

{¶13} In her first, second, and third assignments of error, Foster argues that the trial court erred by designating Severns as the residential parent and legal custodian of A.S. Although unclear from her appellate brief, Foster appears to advance two arguments in support of her assignments of error. First, Foster argues

that the trial court's best-interest findings under R.C. 3109.04(F)(1), specifically its findings that Severns and Foster cannot communicate and that Foster would not facilitate court-ordered visitation, are "unsubstantiated as they were based solely on a lack of credible evidence" or suspect because they are based on Severns's "self-testimony." (Appellant's Brief at 7-8). In addition, Foster argues that rather than weighing the R.C. 3109.04(F)(1) best-interest factors "as an accumulative whole, the trial judge imperceptibly and unconscionably gave prevailing weight of the measures of the statute essentially to a single factor." (*Id.* at 7). However, Foster does not clearly identify this determinative factor. In addition, as part of this argument, Foster contends that the trial court designated Severns as A.S.'s residential parent and legal custodian without giving proper weight to the GAL's shared-parenting recommendation. (*Id.* at 10).

{¶14} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v.*

*Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} Here, we observe that throughout her appellate brief, Foster incorrectly characterizes the trial court's May 30, 2018 judgment as a "modification" of an existing decree allocating Severns's and her parental rights. (*E.g.*, Appellant's Brief at 10) ("[T]he trial judge failed to prove that the modification of the parental rights and responsibilities was necessary * * * to serve the best interests of the child[] * * *."). Rather than being a modification of an existing custody decree, the trial court's May 30, 2018 judgment was the product of an original proceeding to determine custody.

{¶16} Because A.S. was born out of wedlock, custody of A.S. was controlled by R.C. 3109.042 at the time Severns filed his complaint in June 2016. R.C. 3109.042 provides, in relevant part:

> An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian.

R.C. 3109.042(A). Prior to the trial court's May 30, 2018 judgment, no court had issued an initial decree allocating Severns's and Foster's parental rights. Thus, until the May 30, 2018 judgment, Foster served as A.S.'s residential parent and legal custodian by operation of law. Yet, "even though the unmarried mother is the residential parent until a court order says otherwise, when the court is first asked to issue an order, the matter is considered an original custody determination rather than a ruling on a request for modification of a prior custody determination." *In re J.K.*, 7th Dist. Carroll No. 14 CA 899, 2014-Ohio-5502, ¶ 26, citing *In re S.S.L.S.*, 7th Dist. Columbiana No. 12CO8, 2013-Ohio-3026, ¶ 16, *Maine v. Jones*, 7th Dist. Mahoning No. 06MA191, 2007-Ohio-5043, ¶ 55, 57, *Francis v. Westfall*, 7th Dist. Jefferson Nos. 03JE20 and 03JE21, 2004-Ohio-4543, ¶ 15, and *DeWitt v. Myers*, 2d Dist. Clark No. 08-CA-86, 2009-Ohio-807, ¶ 14-16. Similarly, "'Ohio law provides that R.C. 3109.04(E), concerning modification of a prior decree, is inapplicable to temporary orders with custody pending.'" *Id.* at ¶ 27, quoting *Gomez v. Gomez*, 7th Dist. Noble No. 06 NO 330, 2007-Ohio-1559, ¶ 14, citing *State ex rel. Thompson v. Spon*, 83 Ohio St.3d 551, 554-555 (1998). Hence, while Foster acted as A.S.'s

residential parent since her birth and was identified as A.S.'s residential parent and legal custodian in various temporary orders throughout the pendency of this case, the trial court did not effect a "modification" within the meaning of R.C. 3109.04(E) when it designated Severns as A.S.'s residential parent and legal custodian. Instead, the trial court's May 30, 2018 judgment is the product of an original proceeding to determine custody though it changed the identity of A.S.'s residential parent and legal custodian.

{¶17} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * *, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). "'[T]he best interest standard must be applied in initial actions to allocate parental rights in cases involving children of unmarried parents as well as in the context of divorce, dissolution, or annulment.'" *Loewen v. Newsome*, 9th Dist. Summit No. 28107, 2018-Ohio-73, ¶ 16, quoting *Anthony v. Wolfram*, 9th Dist. Lorain No. 98CA007129, 1999 WL 771601, *2 (Sept. 29, 1999). R.C. 3109.04(F)(1) provides:

> In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree

allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)     Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)     Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j).

**{¶18}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Id.*, citing *Meachem*, 2011-Ohio-519, at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22.

**{¶19}** In its May 30, 2018 judgment, the trial court specifically mentioned and analyzed each of the best-interest factors set forth in R.C. 3109.04(F)(1). (Doc. No. 93). After making findings responsive to each of the R.C. 3109.04(F)(1) best-

interest factors, the trial court concluded that "it is in the best interest of the child that [Severns] be named residential parent of [A.S.]" (*Id.*). Thus, there is little question that the trial court considered all of the enumerated best-interest factors as required by R.C. 3109.04(F)(1).

{¶20} Nevertheless, Foster contends that the trial court's R.C. 3109.04(F)(1) best-interest findings are not supported by the record. Specifically, she argues that the "trial court's findings that the parents could not communicate and that [Foster] would not facilitate court ordered visitation are unsubstantiated as they were based solely on a lack of credible evidence." (Appellant's Brief at 7). She argues further that the trial court erred by relying on Severns's "self-testimony." (*Id.* at 8). However, we conclude that competent, credible evidence supports each of the trial court's best-interest findings and that the trial court did not err by crediting Severns's testimony. As a result, Foster's argument is without merit.

{¶21} First, with regard to R.C. 3109.04(F)(1)(a)—the wishes of the child's parents regarding the child's care—the trial court found that Severns filed a motion for shared parenting "asking to be named residential parent for school, medical and extracurricular purposes" and that he proposed a "two/two/three shared parenting plan." (Doc. No. 93). As to Foster, the trial court found that she "seeks to be named residential parent and legal custodian of [A.S.]" and that she wanted Severns to have "parenting time every other weekend and Tuesday during the day." (*Id.*). In

Severns's motion for shared parenting, he requested that he be named residential parent and legal custodian of A.S. but proposed a shared-parenting plan in lieu of being named residential parent of A.S. (Doc. No. 26). Moreover, Severns testified that he wanted to be residential parent and legal custodian for purposes of medical and school decisions and extracurricular activities but that he would be willing to parent A.S. pursuant to a two-two-three shared parenting plan if necessary. (*See* Apr. 16, 2018 Tr. at 243, 314-317). On the other hand, Foster maintained that she wanted to be A.S.'s residential parent and legal custodian with visitation to Severns on Tuesdays and every other weekend. (Apr. 16, 2018 Tr. at 156); (Apr. 17, 2018 Tr. at 109). She further testified that Severns should "[a]bsolutely not" be designated as A.S.'s residential parent. (Apr. 17, 2018 Tr. at 249). Thus, the record supports the trial court's findings as to R.C. 3109.04(F)(1)(a).

{¶22} As to R.C. 3109.04(F)(1)(b)—the wishes and concerns of the child regarding the allocation of parental rights as expressed to the trial court in an in-chambers interview pursuant to R.C. 3109.04(B)—the trial court noted that it did not interview A.S. (Doc. No. 93). "Absent a request by either party for the trial court to interview the children in chambers, the trial court was allowed, but not required, to do so." *Krill*, 2014-Ohio-2577, at ¶ 35, citing R.C. 3109.04(B)(1) and *In re Marriage of Munnings*, 11th Dist. Geauga No. 2005-G-2622, 2006-Ohio-3230, ¶ 18. Given that A.S. was less than two and a half years old at the time of the

custody hearing and that the record does not suggest that either party asked the trial court to interview her, the trial court's decision not to interview A.S. was appropriate. *See id.* at ¶ 36. Accordingly, R.C. 3109.04(F)(1)(b) is inapplicable to the facts of this case.

{¶23} With regard to R.C. 3109.04(F)(1)(c)—the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest—the trial court found that A.S. "has a half-sister she is able to visit on [Foster's] parenting time." (Doc. No. 93). The trial court further found that A.S. "knows and interacts with both maternal and paternal family members" and that A.S.'s "[p]aternal grandmother provides child care for [A.S.]" (*Id.*). The record supports each of the trial court's R.C. 3109.04(F)(1)(c) findings. First, the record establishes that A.S. interacts regularly with her half-sister and that the two have a good relationship. In addition to Foster's extensive testimony documenting the close relationship between A.S. and her half-sister, Foster's mother, Sharon Foster ("Sharon"), testified that A.S. and her half-sister are "very close." (Apr. 17, 2018 Tr. at 36). Sharon further testified, "An older child mothers the younger child. So * * * [A.S. and her half-sister are] very, very close." (*Id.*). In addition, Foster produced numerous photographs depicting, for example, A.S. playing with her half-sister and A.S.'s half-sister reading to A.S. (*See*

Defendant's Ex. J). Therefore, the record thoroughly supports that A.S. has a close, loving relationship with her half-sister.

**{¶24}** The record also demonstrates that A.S. knows and interacts with both maternal and paternal family members. Regarding A.S.'s interactions with Foster's family, Defendant's Exhibit J contains numerous photographs portraying A.S. accompanying Foster to various family functions and interacting happily with her maternal grandparents as well as other members of Foster's family. (*See* Defendant's Ex. J). Additionally, Sharon described Foster's family as "tight" and testified that A.S. regularly sees Foster's family and plays with her cousins and other more-distant relatives. (Apr. 17, 2018 Tr. at 40-42). As to A.S.'s relationship with Severns's family, Barbara Severns ("Barbara"), Severns's mother, testified that she helps Severns take care of A.S. on Mondays and Tuesdays. (Apr. 16, 2018 Tr. at 4-5). She testified that she also takes care of A.S.'s cousins when watching A.S. (*Id.*). Barbara also said that Severns would occasionally work during his parenting time with A.S. and that she, her husband, or Severns's sister would look after A.S. (*Id.* at 14-15). Furthermore, Lynn Jackson ("Jackson"), Severns's sister, testified that A.S. gets along well with her children, A.S.'s cousins. (*Id.* at 62-63). She further testified that, if Severns were designated residential parent, she would be able to keep A.S. overnight or babysit her while Severns is at work. (*Id.* at 96-99). Finally, Severns testified that A.S. frequently interacts with his family and that she is well-

bonded with her grandparents, aunt, and cousins. (*Id.* at 197). Thus, the record supports that A.S. knows and interacts with both maternal and paternal family members.

**{¶25}** Finally, the record establishes that A.S.'s paternal grandmother, Barbara, often cares for A.S. As discussed above, Barbara testified that she cares for A.S. whenever Severns has to work during his parenting time. (*Id.* at 4-5, 14-15). In addition, Barbara testified that, if Severns were awarded custody, she would be willing and able to care for A.S. whenever Severns has to work. (*Id.* at 50-52).

**{¶26}** Regarding R.C. 3109.04(F)(1)(d)—the child's adjustment to the child's home, school, and community—the trial court found that A.S. "appears to be adjusted to both parties' homes." (Doc. No. 93). The trial court further found that A.S. is not yet of school age and that she "has the opportunity to see her half sibling * * * on a regular basis." (*Id.*). The record supports the trial court's R.C. 3109.04(F)(1)(d) findings. First, as discussed in detail above, the record clearly establishes that A.S. has a close relationship with her half-sister and that she and her half-sister have regular visits in Foster's home. In addition, because A.S. was less than three years old at the time of the hearing, it is uncontested that she is not yet of school age.

**{¶27}** There is also ample evidence in the record supporting the trial court's finding that A.S. is adjusted to both Severns's and Foster's home. A.S. lived

primarily with Foster from birth, and multiple witnesses testified that A.S. is happy and well-adjusted in Foster's home and that Foster provides good structure and care for A.S. (*See* Apr. 17, 2018 Tr. at 33-36, 42-45, 249, 281). Moreover, the GAL reported that Foster's "home is always clean and appropriate" and that Foster "is very successful in providing a warm and loving environment which allows [A.S. and her half-sister] to thrive." (Doc. No. 84). Regarding A.S.'s adjustment to Severns's home, Foster expressed some concerns about the cleanliness of Severns's prior residences. (*See* Apr. 17, 2018 Tr. at 126-127). However, the GAL reported that in "all of [his] home visits, [Severns's] house has been clean and appropriate." (Doc. No. 84). In addition, the GAL reported that during a home visit, Severns was "very appropriate" with A.S. and that A.S. "was very happy to be with her father." (*Id.*). Finally, the record reflects that Severns has established a residence with which A.S. is familiar. Although Severns moved multiple times during the first two years of A.S.'s life, two weeks prior to the final custody hearing, he signed a one-year lease for the residence he had been living in since early 2017 with a roommate, Ben Caldwell ("Caldwell"). (Plaintiff's Ex. 2). (*See* Doc. No. 46). While Foster expressed some concern about Caldwell due to his prior criminal convictions for drug abuse and possession and allegations that he used marijuana around A.S., the record reflects that, as of April 2018, Caldwell is no longer residing in the residence with Severns and only Severns and A.S. use the premises as their residence. (*See*

Apr. 16, 2018 Tr. at 184, 258); (*See* Apr. 17, 2018 Tr. at 138); (*See* Plaintiff's Ex. 2); (*See* Defendant's Ex. A). Altogether, the record supports the trial court's R.C. 3109.04(F)(1)(d) findings.

{¶28} With respect to R.C. 3109.04(F)(1)(e)—the mental and physical health of all persons involved in the situation—the trial court found that while A.S. appears to be in good health overall, she has not received all of her childhood vaccinations. (Doc. No. 93). The trial court found that Foster "practices a holistic medicine approach" and that despite her testimony that she would have A.S.'s vaccines completed, she had yet to do so. (*Id.*). In addition, the trial court made findings concerning Severns's and Foster's physical and mental health. As to Severns, the trial court found that he recently suffered a seizure. (*Id.*). However, the trial court also found that Severns underwent a CAT scan and "there were no adverse neurological findings." (*Id.*). With respect to Foster, the trial court found that she once "became depressed and expressed ideations of self-harm." (*Id.*). The trial court noted that it appears that Foster did not actually cause herself harm. (*Id.*).

{¶29} The record demonstrates that A.S. is generally in good health, happy, well-fed, and in a nurturing environment. (*See* Apr. 16, 2018 Tr. at 21-22, 76, 78-79); (*See* Apr. 17, 2018 Tr. at 32, 181, 281). However, the record also establishes that A.S. is not current on her vaccinations. (*See* Apr. 16, 2018 Tr. at 119-120, 139, 177). Foster acknowledged that she was "the one to make the decision not to

vaccinate" A.S. (*Id*. at 124). Foster testified that although A.S. has received some vaccinations and that she is not "100%" opposed to vaccination, A.S. has not been administered vaccinations in accordance with standard immunization schedules. (*See* Apr. 17, 2018 Tr. at 181-182); (*See* Plaintiff's Ex. 3). She testified that she does intend to continue vaccinating A.S. but that she wishes to do so by means of a "slow process of introducing" them to A.S. (Apr. 17, 2018 Tr. at 182). She acknowledged that she would vaccinate A.S. if ordered to do so by the court but that she "would like to do one once a month" and that her nurse practitioner did not disapprove of this plan. (*Id.* at 182-183). Severns expressed concerns about A.S.'s vaccinations, noting that A.S. is not current on vaccines and that he would "like her to be current on vaccines she can get now." (Apr. 16, 2018 Tr. at 198).

{¶30} The record also supports the trial court's finding that Foster takes a "holistic" or "organic" approach to medicine. Both Severns and Barbara described Foster's approach to medicine as "holistic." (*See* Apr. 16, 2018 Tr. at 10-11, 203-204). Likewise, the GAL agreed that Foster takes a more holistic approach to medicine. (Apr. 17, 2018 Tr. at 266). He testified that Foster "is less traditional * * * in her medical views" and that there is "a tendency for more organic, natural, homeopathic, [and] vegetarian" approaches. (*Id.*). However, he stressed that Foster "does give medicine." (*Id.*). Furthermore, when Foster was asked whether she believed in holistic medicine, she responded that she "believe[s] in organic." (Apr.

16, 2018 Tr. at 176). She testified that she does not "give medicine unless it's necessary." (*Id.* at 177). However, she emphasized that she does take A.S. to the doctor and administers medicine when necessary and that she would absolutely take A.S. to the hospital to treat a life-threatening illness. (*Id.* at 138); (Apr. 17, 2018 Tr. at 180-181). Thus, although the record demonstrates that Foster does not entirely reject traditional medicine, it also supports that she does take a "holistic" or "organic" approach to treatment when possible.

{¶31} In addition, the record establishes that while Severns suffered at least one seizure, neurological testing did not reveal any abnormalities. Barbara testified that Severns once suffered a seizure while driving and that she was not certain whether Severns sought treatment. (Apr. 16, 2018 Tr. at 12-13). However, she denied knowledge of any additional seizures suffered by Severns. (*Id.* at 14). Severns himself testified that he suffered a seizure in 2016. (*Id.* at 207). He testified that afterward, he went to the doctor where they "did a CT scan." (*Id.* at 208). Severns stated that the doctor "said there was nothing they could see" and that he believes that meant that nothing was wrong. (*Id.*).

{¶32} Finally, the record supports the trial court's findings regarding Foster's mental health. Foster testified that after the father of A.S.'s half-sister was designated as the child's residential parent, she was very upset. (Apr. 17, 2018 Tr. at 134-136). Severns testified that Foster confided in him that she wanted to commit

suicide or run away. (Apr. 16, 2018 Tr. at 217-218). He stated that he was concerned for her safety. (*Id.* at 218). Foster conceded that she once stated to Severns that she wished she could die and that she might have mentioned wanting to run away, but she insisted that she was just venting her frustrations to Severns. (Apr. 17, 2018 Tr. at 227, 246, 259-260). Foster flatly denied that she was actually suicidal. (*Id.* at 260). In addition, Sharon testified that she did not interpret Foster's behavior after A.S.'s half-sister's father was named residential parent as stemming from mental illness but rather as an expression of grief over the change in custody. (*Id.* at 38-39). Sharon further testified that she did not believe that Foster's behavior indicated that she wanted to harm herself. (*Id.* at 39). Indeed, the record contains no evidence that Foster harmed herself or that her emotional issues persisted to the day of the final hearing. In sum, the record supports each of the trial court's findings under R.C. 3109.04(F)(1)(e).

{¶33} Because they concern interrelated issues, we address the trial court's findings under R.C. 3109.04(F)(1)(f) and (i) together. As to R.C. 3109.04(F)(1)(f)—the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights—the trial court noted that the "primary issue in this case is parenting time." (Doc. No. 93). It found that Severns "has been willing to share parenting responsibilities with" Foster whereas Foster "desires to be named residential parent and legal custodian of the child."

(*Id.*). With respect to R.C. 3109.04(F)(1)(i)—whether the residential parent has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court—the trial court found that the "parties have been operating under a Shared Parenting Order with [Foster] as residential parent and [Severns] having parenting time on a two/two/three day basis." (*Id.*). Although the trial court found that "there has been compliance with the plan," it also found that Foster is "frequently late for drop off and pick up." (*Id.*). Finally, the trial court found that Foster had denied Severns's requests for additional time with A.S. (*Id.*).

{¶34} First, the trial court's findings regarding Severns's and Foster's wishes for parenting time are supported by the record. Although Severns testified at various times that he wanted to be the sole residential parent and legal custodian of A.S., he also stated that he would not object to a more equitable division of parenting time and responsibilities. (*See* Apr. 16, 2018 Tr. at 314-315). On the other hand, Foster steadfastly insisted on being A.S.'s sole residential parent and legal custodian. (Apr. 17, 2018 Tr. at 156, 192, 249). However, she did concede that she wanted at least a 50-50 division of parenting time if the trial court did not designate her as sole residential parent. (*Id.* at 198).

{¶35} The record also supports that although Foster generally complied with the parenting plan set forth in the various temporary orders, she was frequently late for drop-offs and pickups. Foster testified that she always tried to comply with the

court's visitation orders and that she never wanted to withhold A.S. from Severns. (*Id.* at 142-143). However, she admitted that she was frequently late in dropping off A.S. with Severns for visitation and often tardy in picking A.S. up from visitations. (*Id.* at 159, 218-221). Similarly, Severns testified that Foster does not drop A.S. off on time and she does not always tell him that she is going to be late. (Apr. 16, 2018 Tr. at 189). Severns testified that when Foster is late, he tries to make up time with A.S. by keeping her later on the day Foster is late or on a different day, and Foster allows him to do so. (*Id.* at 225); (Apr. 17, 2018 Tr. at 159). In addition, Barbara testified that Foster dropped off A.S. on time on only a handful of occasions and that she was usually an hour or more late. (Apr. 16, 2018 Tr. at 6). Finally, multiple text message exchanges between Severns and Foster were introduced wherein the two discuss the times at which Foster dropped off A.S., Foster's tardiness, or Severns's intentions to make up lost time with A.S. (*E.g.*, Plaintiff's Ex. 39, Defendant's Ex. D).

{¶36} Finally, evidence in the record supports the trial court's finding that Foster did, at times, deny Severns's requests for additional parenting time. Foster testified that she never wanted to withhold A.S. from Severns and that she permitted Severns to visit with A.S. even when she was not required to do so by court order. (Apr. 17, 2018 Tr. at 106-107). Furthermore, some of the text messages between Severns and Foster reflect that Foster would ask Severns to watch A.S. on days that

were not designated as his parenting days. (*E.g.*, Plaintiff's Ex. 9). However, the record also reflects that Foster would occasionally reject Severns's requests for more parenting time. (*See, e.g.*, Plaintiff's Exs. 11, 12, 30). In some of these exchanges, Foster denied Severns's claims for additional time by saying that she was "[s]ticking to court orders." (Plaintiff's Ex. 12).

{¶37} Concerning R.C. 3109.04(F)(1)(g)—whether either of the parents has failed to make child support payments as required by a child support order—the trial court found that "[t]here is no child support exchanged at this time." (Doc. No. 93). The record supports the trial court's findings. Although Foster had previously moved the trial court to enter an order directing Severns to pay child support, the trial court had not granted her motion. (*See* Doc. Nos. 20, 60). Thus, R.C. 3109.04(F)(1)(g) is inapplicable to the facts of this case.

{¶38} With regards to R.C. 3109.04(F)(1)(h)—whether either parent has been convicted of or pleaded guilty to domestic violence or another criminal offense involving any act that resulted in the child being an abused or neglected child and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or neglected child—the trial court found that "[t]here has been no criminal convictions that resulted in a child being an abused or neglected child, nor has there been any criminal [sic] toward the child." (Doc. No. 93). The record supports the trial court's findings in this respect. First, there is no

evidence in the record suggesting that Severns or Foster, or any member of Severns's or Foster's household, had previously been convicted of or pleaded guilty to any criminal offense that resulted in a child being an abused or neglected child, previously been determined to be the perpetrator of an act resulting in the abuse or neglect of a child, been convicted of domestic violence or a sexually oriented offense, or committed a crime against A.S. Although the record establishes that Severns had been thrice convicted of operating a vehicle under the influence, the last such conviction occurred in 2012, well before A.S.'s birth. (*See* Apr. 16, 2018 Tr. at 23-29, 141-142, 209, 260). Furthermore, there is no evidence that either Severns or Foster have committed any other crimes during A.S.'s lifetime. Both Severns and Foster admitted to prior drug use. (*See* Apr. 16, 2018 Tr. at 141-142, 209-211); (*See* Apr. 17, 2018 Tr. at 225). However, while Foster accused Severns of using marijuana and cocaine during A.S.'s lifetime, there is no other evidence in the record substantiating any of Foster's claims. (*See* Apr. 17, 2018 Tr. at 117-118). In addition, there is no evidence that Foster used drugs during A.S.'s lifetime, and she denied abusing drugs or alcohol. (*Id.* at 167). Finally, there is little, if any, evidence that Severns and Foster were violent or abusive with A.S. or each other. Chief Brian Zerman ("Chief Zerman") of the Village of Mount Gilead Police Department testified that he responded to a report from Foster accusing Severns of harassing her during an exchange and grabbing her arm in front of A.S. (Apr. 17,

2018 Tr. at 25-26). However, Chief Zerman testified that he could not recall whether Foster said she had suffered bruising, that no charges were filed in relation to the alleged incident, and that he had no knowledge of any further complaints lodged by Foster against Severns. (*Id.* at 29-31). Thus, the record supports the trial court's R.C. 3109.04(F)(1)(h) findings.

{¶39} Finally, regarding R.C. 3109.04(F)(1)(j)—whether either parent has established a residence, or is planning to establish a residence, outside of Ohio—the trial court found that "[n]either parent has established a residence or is planning to establish a residence outside the State of Ohio." (Doc. No. 93). The record supports the trial court's findings in this respect. The record does not contain any evidence suggesting that either Severns or Foster have relocated outside of Ohio or that either of them intend to move out of Ohio. In fact, as reflected by Severns's and Foster's statements that they want A.S. to go to the same Ohio school district and Severns's statement that he does not plan on moving out of that school district, the record affirmatively indicates that both Severns and Foster intend to stay in Ohio. (Apr. 16, 2018 Tr. at 110, 207, 317). Therefore, the record supports the trial court's R.C. 3109.04(F)(1)(j) findings.

{¶40} Contrary to Foster's argument, the fact that the trial court may have relied on Severns's "self-testimony" in reaching some of its R.C. 3109.04(F)(1)(a)-(j) findings does not render these findings against the weight of the evidence. The

trier of fact is in a better position to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). A witness's self-interest in the outcome of the proceedings is but one factor for the trier of fact to consider in assessing the credibility of the witness. *See In re Adoption of Stamps*, 1st Dist. Hamilton No. C-840190, 1984 WL 7069, *4 (Nov. 21, 1984), quoting *In re Smith*, 12th Dist. Preble No. CA 287, 1981 WL 5107, *3 (Apr. 22, 1981). *See also* R.C. 2923.03(D) (setting forth a jury instruction in criminal trials advising the jury that "[t]he testimony of an accomplice does not become inadmissible because of his * * * self-interest, but the admitted or claimed complicity * * * may affect his credibility * * * and require that it be weighed with great caution"). In this case, to the extent that the trial court relied on Severns's testimony in rendering its findings, it did so with the knowledge that Severns had an interest in the outcome of the custody hearing and that, as a result, he possessed a motivation to portray himself in the best possible light. The trial court was in the best position to evaluate Severns's credibility in light of his self-interest, and we find nothing in the record suggesting that the trial court erred by crediting Severns's testimony. Therefore, Foster's argument is without merit.

**{¶41}** Thus, in light of the foregoing, we conclude that the trial court's best-interest findings under R.C. 3109.04(F)(1)(a)-(j) are supported by competent, credible evidence.

**{¶42}** In addition to attacking the trial court's findings under R.C. 3109.04(F)(1)(a)-(j), Foster also argues that the trial court erred by finding that she and Severns cannot communicate effectively and make joint decisions with respect to A.S. Here, Foster seems to confuse some of the trial court's findings in its May 30, 2018 judgment. The trial court did, in fact, find that Severns and Foster "do not have the ability to cooperate and make joint decisions with respect to [A.S.]" (Doc. No. 93). However, the trial court made this finding under R.C. 3109.04(F)(2)(a) in support of its conclusion that a shared-parenting arrangement is not in A.S.'s best interest—a conclusion that Foster does not contest on appeal. While R.C. 3109.04(F)(1) enables a trial court to consider "all relevant factors" in determining a child's best interest, it is unclear whether the trial court considered its findings under R.C. 3109.04(F)(2)(a) as an additional factor relevant to determining A.S.'s best interest for purposes of designating a residential parent. Nonetheless, to the extent that the trial court did consider Foster and Severns's inability to communicate and cooperate as relevant to A.S.'s best interest, the trial court's findings in this respect are supported by the record.

{¶43} The record is replete with examples of Severns and Foster's inability to effectively communicate with one another and make joint decisions regarding A.S. First, as documented by a number of their exhibits, Severns and Foster are often incapable of communicating in a civil fashion. Plaintiff's Exhibit 20 is illustrative. In Plaintiff's Exhibit 20, Severns asks Foster the same question on October 29 and 30, 2016: "How is [A.S.] today?" (Plaintiff's Ex. 20). Foster does not respond to Severns until October 31, 2016, after he texted her yet again asking about A.S. (*Id.*). At that point, the conversation deteriorates almost immediately with Foster telling Severns that he "shouldn't have been doing drugs" and Severns asking in response whether Foster was on drugs. (*Id.*). Severns then accuses Foster of being a liar and calls her "spiteful" and "mean." (*Id.*). Many of Severns and Foster's text message exchanges document a pattern of tense, unproductive communication. (*E.g.*, Plaintiff's Exs. 6, 17, 38, 39); (*E.g.*, Defendant's Exs. F, O, S). In addition, the GAL's report supports the trial court's findings about how poorly Severns and Foster communicate. As to Severns, the GAL stated that Severns "does allow himself to become very upset" with Foster, and he "does appear to belittle [Foster] and treat her in a very negative way." (Doc. No. 84). The GAL stressed that Severns "must * * * learn to act in a manner that is less combative and belittling toward others." (*Id.*). Regarding Foster, the GAL noted that she

"communicates in a way in which she appears pedantic, inflexible, bossy, and at times just plain stubborn." (*Id.*).

{¶44} Furthermore, the record supports that Severns and Foster cannot make joint decisions for A.S. The GAL noted that "neither parent can agree on the simplest of things." (*Id.*). The record also evidences that Severns and Foster frequently disagreed over what to feed A.S., whether A.S. should go to daycare or stay with family members, who to hire as A.S.'s babysitter, and when and where A.S. would go for checkups with a pediatrician and other medical treatment. (*See* Apr. 16, 2018 Tr. at 123-124, 158, 176, 189-190, 199, 204-205, 235, 285, 289-290, 296-297); (*See* Apr. 17, 2018 Tr. at 161, 188-189, 207-208). Moreover, many of these disagreements are borne out in the text messages between Severns and Foster. Therefore, the record thoroughly supports the trial court's findings concerning Severns and Foster's inability to communicate and make joint decisions in A.S.'s best interest.

{¶45} Having concluded that the trial court's findings are supported by competent, credible evidence, we next address Foster's argument that the trial court incorrectly weighed the best-interest factors in favor of designating Severns as A.S.'s residential parent and legal custodian. Specifically, Foster argues that the trial court "gave prevailing weight of the measures of the statute essentially to a

single factor," which Foster does not identify, instead of weighing the factors "as an accumulative whole." (Appellant's Brief at 7).

**{¶46}** Foster's argument is without merit. First, there is no indication in the trial court's May 30, 2018 judgment that it actually viewed any one of the R.C. 3109.04(F)(1) factors as more important than any of the others or that its decision to designate Severns as A.S.'s residential parent was based on just one of its R.C. 3109.04(F)(1)(a)-(j) findings. To the contrary, the trial court's May 30, 2018 judgment reflects that the trial court considered each of the R.C. 3109.04(F)(1) best-interest factors before designating Severns as A.S.'s residential parent. More importantly, even if the trial court clearly gave more weight to one of the R.C. 3109.04(F)(1) best-interest factors than it did to any of the others, the trial court would not have necessarily abused its discretion. As discussed above, "[t]he trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29, quoting *Brammer*, 2013-Ohio-2843, at ¶ 41, citing *Hammond*, 2008-Ohio-2310, at ¶ 51. Thus, so long as the trial court considered each of the factors as required by R.C. 3109.04(F)(1), the trial court had the discretion to give prevailing weight to one factor if it deemed that doing so was required by the facts of the case.

**{¶47}** Finally, the trial court's decision to disregard the GAL's shared-parenting recommendation does not demand a conclusion that the trial court abused its discretion by designating Severns as A.S.'s sole residential parent. "It is well settled that a trial court is not bound by the GAL's recommendations." *Brown v. Heitman*, 3d Dist. Logan No. 8-16-21, 2017-Ohio-4032, ¶ 30. "'A trial court determines the guardian ad litem's credibility and the weight to be given to any report.'" *Id.*, quoting *Galloway v. Khan*, 10th Dist. Franklin No. 06AP-140, 2006-Ohio-6637, ¶ 70, citing *Baker v. Baker*, 6th Dist. Lucas No. L-03-1018, 2004-Ohio-469, ¶ 30. Here, the trial court found that the GAL "supports the shared parenting despite the [GAL's] acknowledgement that neither parent can agree on the 'smallest of things' and assigns fault equally between the parties." (Doc. No. 93). The trial court also noted that the "hallmark of a shared parenting plan is the ability of the parties to communicate effectively without rancor regarding their child" and that Severns and Foster "are unable to work together without conflict." (*Id.*). Thus, the trial court observed that the GAL's recommendation was inconsistent with the purposes of shared parenting and that, in some ways, the recommendation was incompatible with aspects of the GAL's report.

**{¶48}** In conclusion, the trial court's R.C. 3109.04(F)(1) best-interest findings are supported by a substantial amount of competent, credible evidence in the record. Furthermore, in light of these findings, the trial court's decision to

designate Severns as A.S.'s residential parent and legal custodian was not arbitrary, unreasonable, or unconscionable. Thus, the trial court did not abuse its discretion by naming Severns as A.S.'s residential parent.

{¶49} Foster's assignments of error are overruled.

{¶50} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**